Filed 2/24/15  In re Chris R. CA

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re CHRIS R. et al.,<br><br>Persons Coming Under the Juvenile Court Law. | B255631<br>(Los Angeles County<br> Super. Ct. No. DK02178) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RITA S.,<br><br>    Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Julie F. Blackshaw, Judge.  Affirmed.

Frank H. Free, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

**INTRODUCTION**

Rita S. ("Mother") appeals from the juvenile court's jurisdictional order adjudging her three children dependents of the court and its dispositional orders. Essentially, the juvenile court concluded that there was a substantial risk that Mother would inflict serious physical harm on her children. We conclude that substantial evidence supports that conclusion and therefore affirm the trial court's orders.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mother has three children: Chris, Allyson and Jacob.[1] Each child has a different father, none of whom is party to this appeal.

In November 2013, Department[2] filed a section 300 petition relying upon three of the statute's subdivisions: (a) serious physical harm; (b) failure to protect; and (j) abuse of a sibling.[3]

At the January 6, 2014 jurisdictional hearing, the matter was submitted on the four reports generated by Department.[4] The evidence in those reports set forth the following facts.

Mother lives with her mother, O.S., and her two youngest children, Allyson and Jacob. Chris lives with his father, Antonio R., during the week but stays with Mother on the weekends.

---

[1] The children were born: Chris, June 2003; Allyson, April 2009; and Jacob, November 2012.

[2] The Los Angeles County Department of Children and Family Services.

[3] All statutory references are to the Welfare and Institutions Code.

[4] Mother objected to one sentence in the detention report on the basis of the best evidence rule. The trial court sustained the objection and struck the sentence.

On September 24, 2013, Department received a referral that Mother had physically abused 10-year-old Chris. That day, social worker Candice Obilana visited Chris at Antonio R.'s home. Chris told Obilana the following. On September 14, he was at Mother's home. Mother ordered a pizza and wanted Chris to accompany her when she picked it up. Chris said he wanted to stay at home with O.S. (his maternal grandmother). Chris explained that "[M]other counted to three and told him to put his shoes on but [he] kept saying he didn't want to go. Chris said [Mother] called the police and asked the police for help. Chris said the police told her that that she can spank [him]. [She] grabbed Chris's arm to try and turn him so she could spank him. Chris said one arm got stuck under him so he was lying on top of one arm and mother had the other arm in her hand and held it behind Chris's back so he could not move. [Mother] spanked him on the bottom with an open hand over his clothes multiple times. . . . [T]he spankings hurt and he was crying during [them]. . . . Chris stated he had marks on his bottom but he could not see them. . . . Chris said it only hurt for a little bit and that the pain stopped before his dad came to pick him up [shortly thereafter]." During these events, O.S. "was crying and was trying to stop [M]other from spanking Chris but [M]other would not listen."

Antonio R., responding to a phone call from O.S., came to the home to pick Chris up. Before Chris left, Mother told Chris: "[Y]ou are dead to me. You cannot come back here." Chris told Obilana that he was fearful of Mother "sometimes, when she spanks me or yells at me." Chris said Mother yells at him and spanks him "almost every time [he goes] to [her] house." Chris explained that Mother spanks him with a sandal or her hand because either he does not want to

3

leave the home with her or he "just wants to spend time with [O.S.]."[5] Mother "sometimes" spanks his sister Allyson "on the bottom." As of November 5, Chris had not been back to Mother's home and Mother had not called him.

Antonio R. told Obilana that he had received a phone call from O.S. that "[M]other had spanked Chris hard." O.S. "was upset and had been crying." Antonio R. immediately picked Chris up. During the ride home, "Chris was clingy and wanted to sit closely with [his] father." After they arrived home, Antonio R. "checked Chris's bottom and Chris had red marks from [M]other's spanking him." The next day, Antonio R. saw "some bruising on [Chris'] bottom."

On September 30, Obilana interviewed Mother about the incident. Mother said that she had asked Chris to go with her to pick up the pizza but that he had refused. She claimed that Chris kicked her and would not listen to her. Mother called the police who "told her it is legal to spank with an open hand on the bottom." Mother then spanked Chris "over his clothes with her open hand."[6] O.S. tried to stop her. According to Mother, O.S. "is always trying to interfere with how [she] disciplines Chris." Mother conceded that she had not seen nor spoken to Chris since the incident occurred several weeks earlier. She said "she is teaching her son a lesson that he cannot be disrespectful and he cannot kick [his Mother]." Obilana asked Mother if she had told Chris that "he is dead to her." Mother replied that she had told him "you can forget you have a mommy." Mother explained that she told him this "because she wants him to learn his lesson."

---

[5]    In an interview conducted three months later, Chris reiterated "that he had been hit more than once while in [M]other's home" and that she had "struck [him] with an open hand on various parts of his body." However, he claimed that "it was untrue that he had ever been hit by a shoe."

[6]    In a subsequent interview, Mother denied having ever struck Chris with a shoe.

O.S. told Department that on the day in question, Mother "was spanking Chris hard and would not stop." Because Chris was crying and upset, O.S. called Antonio R. O.S. explained that Mother treats Chris "differently" than his siblings. According to O.S., Mother "hits Chris every weekend when he comes over . . . with an open hand to the bottom or with a shoe." When O.S. tells Mother not to hit Chris, Mother "becomes angry [and tells O.S.] to mind her [own] business." Lastly, O.S. said that Mother hits Allyson "in the hand every now and then." Since the incident, Mother has not spoken with O.S.

The juvenile court sustained, as amended, all three subdivisions of the section 300 petition.[7] Each subdivision contained the following identical allegations.

> "On 9/14/13, [Mother] physically abused the child, Chris, by twisting and holding [his] hand behind [his] back, and repeatedly striking [his] buttocks with [her] hands, inflicting redness, marks and bruises to [his] buttocks. On prior occasions, [Mother] struck [Chris'] buttocks with shoes and [her] hands. Such physical abuse was excessive and caused [Chris] unreasonable pain and suffering. [Chris] is afraid of [Mother] and does not wish to visit [her] due to [her] physical abuse of [him]. . . . The physical abuse of [Chris] by the mother . . . endangers [his] physical health and safety and places [him] and [his] siblings, Allyson and Jacob, at risk of physical harm, damage, danger, physical abuse and failure to protect."

The juvenile court explained "that this was more than reasonable discipline, [Mother's] actions with respect to Chris. Chris did state that he was afraid of his mother. The grandmother had to intervene. *This is well beyond what can be expected by reasonable discipline*. [¶] . . . [T]here is a sufficient amount of evidence showing that [Mother] and Chris do have a very contentious relationship

---

[7] The amendments to the petition deleted references to Chris' father, Antonio R.

5

that does result in inappropriate physical abuse at times." (Italics added.) As for the potential threat of serious harm to Allyson and Jacob, the juvenile court reasoned that because "there was much more than reasonable discipline in this case [involving Chris,] . . . [Mother's] failure to recognize that [conclusion] does not give the court confidence that if and when [her other children] reach an age where they also present disciplinary issues, that [Mother] will not engage in that kind of discipline as well."

At the dispositional hearing, Mother asked for return of her children. (The juvenile court had removed all three children from Mother's custody at the November 2013 detention hearing.) In regard to Chris, the juvenile court found by clear and convincing evidence that returning him to Mother's custody would create a substantial danger to his physical health, safety, protection, or emotional well-being; that there were no reasonable means by which he could be protected without removing him from her custody; and that reasonable efforts had been made to prevent and eliminate the need for removal. The court removed Chris from Mother's custody, placed him with his father Antonio R., and ordered six months of family reunification services for Mother. In addition, the court ordered Mother to participate in parenting classes, individual counseling, and conjoint counseling with Chris. As for Allyson and Jacob, the court returned them to Mother's custody because it found that there was not clear and convincing evidence to support their removal from her custody.

This appeal by Mother follows.

## DISCUSSION

Mother first contends that the juvenile court's assertion of jurisdiction over all three children based upon the "serious physical harm" and "abuse of sibling" allegations (§ 300, subs. (a) and (j)) must be reversed because "[t]here simply is no

6

evidence that Chris suffered 'serious physical harm'" or that "Chris or his siblings were at risk of future serious physical harm."  We are not persuaded.

Section 300, subdivision (a), allows a child to be adjudged a dependent of the juvenile court when  "[t]he child [here, Chris] has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent [here, Mother].  For the purposes of this subdivision, *a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated infliction of injuries on the child[,] . . . or a combination of these and other actions by the parent . . . which indicate the child is at risk of serious physical harm.*  For purposes of this subdivision, 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury."  (Italics added.)

Subdivision (j) permits a child to be adjudged a dependent of the juvenile court when his or her "sibling [here, Chris] has been abused . . . as defined in subdivision (a), . . . and there is a substantial risk that the child [here, Allyson and Jacob] will be abused . . . as defined in [that] subdivision[].  The [juvenile] court shall consider the circumstances surrounding the abuse . . . of the sibling, the age and gender of each child, the nature of the abuse . . . of the sibling, the mental condition of the parent . . . and any other factors the court considers probative in determining whether there is a substantial risk to the child."

We review the juvenile court's jurisdictional findings for substantial evidence.  (*In re James C.* (2002) 104 Cal.App.4th 470, 482.)  Using this standard, we review the record in the light most favorable to the trial court's decision, drawing all reasonable inferences from the evidence to support its findings.  We do not reweigh the evidence, redetermine credibility or exercise independent judgment.  (*In re I.J.*  (2013) 56 Cal.4th 766, 773.)  It is Mother's burden, as

7

appellant, to show that there is insufficient evidence to support the juvenile court's findings. (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 138.)

Here, substantial evidence supports the trial court's finding that Mother's physical abuse of Chris created a substantial risk that he will suffer serious physical harm at her hand. On September 14, Mother grabbed Chris, twisted his arm around his back so he could not move, held him down and spanked him multiple times. O.S. asked Mother to stop but Mother ignored her. Mother spanked Chris hard enough to leave bruises and marks. Further, contrary to what Mother suggests, this was not an isolated incident. Mother and Chris had a contentious relationship. Chris was afraid of her. Chris said that Mother spanked him with her hand or her shoe "almost every time" he visited her home.[8] O.S. confirmed Chris's statement, telling Department that "every weekend" Mother hit him with a shoe or spanked him. Based upon all of these facts, substantial evidence supports the trial court's finding that Chris and his siblings (Jacob was only 14-months old and Allyson was just under five years old at the time of the jurisdictional hearing) were at substantial risk of serious physical harm.

Mother's contrary argument is not persuasive. First, she cites several reported decisions to argue that "[c]ases in which 'serious physical harm' allegations have been affirmed stand in marked contrast to this one" and that "[e]ven cases in which 'serious physical harm' findings have been reversed have involved more serious conduct than [her conduct]." This approach misses the mark for two reasons. The first is that the facts of each case are unique so that

---

[8]    Mother relies upon Chris' second statement to Department in which he recanted his initial claim that Mother had hit him with a shoe to argue for a contrary conclusion. (See fn. 5, *ante*.) Putting aside the fact that O.S. had also said that Mother frequently hit Chris with a shoe, it was the juvenile court's responsibility, as the trier of fact, to resolve this conflict in the evidence. It resolved the conflict against Mother. That determination is binding upon us. (*In re I.J., supra,* 56 Cal.4th at p. 773.)

comparisons are not necessarily relevant, let alone dispositive. The second is that "section 300, subdivision (a) may apply when a minor suffers less serious injuries but there is a history of repeated abuse." (*In re Isabella F., supra,* 226 Cal.App.4th at p. 139.) As explained in the previous paragraph, this matter presents a case of repeated abuse: Mother struck and spanked Chris almost every time he visited her.

Mother next urges that the juvenile court committed reversible error when it sustained the section 300, subdivision (b) "failure to protect" allegations. For the first time on appeal, Mother urges that the allegation "was not properly pled and must be stricken." As we held in *In re Christopher C.* (2010) 182 Cal.App.4th 73, 82-83, Mother's failure to demur to the petition in the trial court constitutes a forfeiture of that claim. In any event, when, as here, "a dependency [section 300] petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Here, we have concluded that substantial evidence supports the juvenile court's jurisdictional findings based upon subdivisions (a) and (j) of section 300. Consequently, there is no need to discuss whether the juvenile court erred in sustaining the subdivision (b) allegations. (*In re Christopher C., supra,* 182 Cal.App.4th at p. 83 [the juvenile court's jurisdiction can rest on a single ground].)

Lastly, Mother seeks reversal of the juvenile court's dispositional orders. She fails to identify which dispositional orders were erroneous or to explain why they should be reversed other than to claim that "[b]ecause the jurisdictional findings must be reversed, so must the dispositional orders." Since we have found

substantial evidence supports the juvenile court's jurisdictional findings, we affirm its dispositional orders.

## DISPOSITION

The orders appealed from are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


COLLINS, J.

10